## James Mackoy *v.* J. B. Holton & Co.

The usage, on the neglect, or refusal of the buyer to come in a reasonable time, after notice, and pay for and take the goods, is for the vendor to sell the same at auction, and to hold the buyer responsible for any deficiency in the amount of sales.

It may be true, under the strict rules of pleading at Common Law, that a plaintiff is bound to affirm his contract by bringing his action for damages for the non-performance of it, or disaffirm the agreement *ab initio*, and bring his action for money had and received to his use. Under our practice, if defendants do not except and force the plaintiff to make an election, it is too late after evidence has been taken and trial had, to raise an objection of this character.

Facts that show an intention to rescind a contract.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge, J. Hite & Gaither*, for plaintiff and appellant. *Ogden & Duncan*, for defendants.

DUNBAR, J. This suit is brought on the following contract: "Foster, Kentucky, December 2, 1850. An article of agreement made and entered into between *J. B. Holton & Co.* (composed of *J. B. Holton, Wm. Pugh* and *Joseph Taylor*) of the first part, all of Bracken county, Kentucky, and *James Mackoy*, of Mason county, State aforesaid, of the second part, witnesseth: that the above named *J. B. Holton & Co.* have this day sold unto the above named *Jas. Mackoy*, their entire purchase of tobacco, supposed to be two hundred and fifty thousand pounds of leaf tabacco, more or less; *Mackoy* to receive the tobacco prized in the hogshead, *Holton* to receive the tobacco and prize it. The tobacco to be in good merchantable order and in good prizing order. *Mackoy* has the privilege of rejecting ten hogsheads of the entire purchase only, and this he is to have also, if they can agree on the price of it. And he, *Mackoy*, is to pay the sum of eight dollars per hundred pounds for all the tobacco so received, to pay five hundred dollars down, in the following manner: Two hundred and eighty dollars in hand, the receipt of which is hereby acknowledged, and give

his individual note, due on the 25th December, instant, for the sum of two hundred and twenty dollars. It is expressly understood that this five hundred dollars, say, $280 cash, and $220 in his note, is given to bind the trade, and is forfeited on the part of said *Mackoy*, should he not comply with the stipulations following, which are as follows: *Mackoy* is to furnish the funds at the rate of eight dollars per hundred to *J. B. Holton & Co.*, as fast as it is needed, to pay the farmers as the tobacco comes in, besides the five hundred which has been mentioned before, in case he complies with the contract, then the five hundred dollars to be placed to his, *Mackoy's*, credit, as so much paid on the purchase, &c."

The plaintiff alleges that he has paid to the defendants, in part performance of this contract, seventeen hundred and sixty-five dollars, that he has always been ready and willing to perform his part of said agreement, but that the defendants have failed and refused to deliver the tobacco, when amicably thereunto requested, and moreover, in order to defraud him of his just rights, had shipped the tobacco to the city of New Orleans. He seeks to recover both the damages which he has sustained from the failure of the defendants to deliver the tobacco, in conformity with the contract, and the moneys he has paid them.

The defendants in their answer, admit the contract, as set forth in plaintiff's petition, and the payments to them of the sums of money mentioned therein, but allege that the plaintiff failed to furnish them with necessary funds to pay for the tobacco, as it was brought in by the farmers, as he was bound to do; that they delivered to the plaintiff, in part compliance with their contract, five hogsheads of tobacco on the 16th January, 1850, and that afterwards, when the tobacco came in very fast upon them, the money aforesaid, that had been paid to them by plaintiff, was quickly exhausted; that they notified him of the fact, and required and urged him again and again, to furnish them with more money, which he utterly failed and neglected to do. In consequence of which default on the part of the plaintiff, they, the defendants, were compelled to raise the money themselves to pay for the tobacco, and to ship it on their own account to their factors in New Orleans, *Schultz & Hadden*, and *Beatty, Leggett & Co.* The defendants plead in reconvention, allege that they have sustained damages from the default of the plaintiff to the amount of five thousand dollars, and that they have further the right to retain the five hundered dollars, the forfeit, or penalty incurred by plaintiff for his non-compliance with his contract.

The plaintiff commenced this suit by attaching the tobacco in the hands of the beforementioned factors in this city, who, also intervened, claiming a privilege upon the proceeds of the tobacco for advances made by them. The District Judge decided in their favor, to the extent of their advances, from which portion of the judgment no appeal has been taken. The case is therefore disembarrassed of any inquiry relative to the claims of the intervenors, and is to be decided by us solely upon the controversy between the original parties.

We agree with the District Judge, in the opinion, that it is shown by the evidence, that the plaintiff after having paid seventeen hundred and sixty-five dollars, and received five hogsheads of tobacco, failed to comply with his contract in furnishing the funds which he was bound to provide the defendants with, for the purpose of making payments to the farmers for their tobacco, as it was delivered by them to the defendants. It is also shown that the defendants were put to much inconvenience and expense in having to raise the money themselves. But we think it is likewise clearly established, that on the default of

MACKOY
*v.*
HOLTON.

the plaintiff to furnish the necessary funds for the payment to be made for the tobacco, that the defendants elected to rescind the contract, and consider it forfeited by shipping the tobacco on their own account to New Orleans, a distant market, with the view of making a handsome speculation thereby. One of the witnesses says: "that he saw *Jesse B. Holton* on his way down from Maysville, and in conversation with him on that day, he told me that *James Mackoy* had forfeited his contract, and he thought he would make more money than if he, *Mackoy*, had complied with his contract; this conversation took place a few days after the contract was claimed to be broken, at which time the prospects of tobacco were very promising." The usage, on the neglect or refusal of the buyer to come in a reasonable time, after notice, and pay for and take the goods, is for the vendor to sell the same at auction, and to hold the buyer responsible for the deficiency in the amount of sales. 2 Kents Com. 504. There is no usage or authority, with which we are acquainted, that authorises the vendor under such circumstances to ship the goods to a distant market for sale, and then charge the vendee with the difference in price. We do not understand the case of *Applegate* v. *Hogan*, 9th B. Monroe's Reports, to which we have been referred by defendants' counsel, as maintaining any such doctrine. The conduct of the defendants can be viewed in no other light than as a relinquishment of the contract, and if the contract be considered as rescinded, the buyer has a right to recover back the money paid. *Raymond* et al. v. *Bearnard*, 12 Johnson, 274. *Gillet* v. *Maynard*, 5 Johnson, 87. The same authority says, that if the contract is rescinded in part, it must be in toto; and the plaintiff's right to recover back the money paid, is undeniable. Believing, however, as we do, that the plaintiff was first in default in not furnishing to the defendants, the necessary funds to pay for the tobacco, in conformity to his contract; we do not consider that he is entitled *ex æquo et bono* to recover from them the forfeit, or penalty of five hundred dollars.

It is, however, contended by the counsel of the defendants, that the plaintiff in his petition has set up contrary, or inconsistent causes of action; that he was bound· to affirm·the contract, by bringing his action for damages for the non-performance of it, or he should have elected to disaffirm the agreement *ab initio*, and brought his action for money had and received to his use. Sugden's Law of Vendors, 173–4.

This may be true, under the strict rules of special pleading at Common Law, but not under our more liberal system. Before the adoption of the Code of Practice in the case of *Kenny* et al. v. *Dow*, 10th Martin, 601, it was held that after evidence had been taken and trial had such a defect was cured. This rule, reasonable in itself, has not been changed by our Code of Practice, arts. 149, 152. The defendants might have filed an exception and forced the plaintiff to make an election, but not having done so in the proper time, it is now too late.

The same objection might be made to the defendants' answer,in reconvention.. In that, they claim the penalty and sue for a breach of covenant; to which, in like manner, no exception was taken. Chitty on Contracts, 868.

Under our equitable system of pleading, we are enabled to do substantial justice between the parties without being driven to the necessity of dismissing both their claims.

After crediting the defendants with four hundred and twenty-four dollars, the value of five hogsheads of tobacco delivered to plaintiff, and allowing them to retain the five hundred dollars forfeit or penalty, there will be a balance due to plaintiff of eight hundred and forty-one dollars.

It is therefore ordered and decreed, that the judgment of the District Court be avoided and reversed, and there be judgment for the plaintiff against the defendants *in solido,* for the sum of eight hundred and forty-one dollars, with five per cent. per annum interest from judicial demand, to wit: the 27th of March, 1851, with costs in both Courts.